IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CALVIN L. GREER                                                                    PLAINTIFF


        v.                              CASE NO.        12-3140


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).


### I.  Procedural Background:

The plaintiff filed an applications for DIB & SSI  on November 2, 2009, alleging an onset

date of November 12, 2007, due to plaintiff's bad back bad right hip, both knees, depression, and

anxiety(Tr. 168).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff

then requested an administrative hearing, which was held on December 7, 2010.  Plaintiff was

present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael
J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 35 years of age and possessed a High School education.  The Plaintiff had past relevant work ("PRW") experience as a telecommunications installer, assistant manager at a plastic molding factory, factory fabricator, salesman, welder, and motor-cycle parts store salesman.  (T. 169).

On June 13, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disc disease/osteoarthritis of the lumbar spine, osteoarthritis of the right hip, obesity, essential hypertension, and a personality disorder, NOS did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to sedentary work with additional restrictions.  T. 14.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as machine tender, assembler, and surveillance system monitor.  T. 20.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A.  Step Two Analysis**

The Plaintiff contends the ALJ erred in failing to find the Plaintiff's right knee impairment to be severe. (ECF No. 11, p. 18).

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).  If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

The Plaintiff's knee injury first appears in a chiropractic note in October 2000 (T. 378) where the chiropractor notes that the plaintiff stated he was "jerked down by truck bumper."  The chiropractic treatment ends in June 2001 with "MA" which the court assumes is maximum adjustment. (T. 379).  The Plaintiff is regularly employed from 2000 to 2006 (T. 148) and the Plaintiff never stopped working because of his medical condition but ceased working because he was sent to prison in March 2006 (T. 174).  Absent a showing of deterioration, working after the onset of  an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005).  The court also notes that there is not one medical record dealing with

-4-

the Plaintiff's right knee during this same period. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

The Plaintiff claims in April 2010 that he dislocated his right knee almost six months after filing for disability (T. 235) but an x-ray April 5, 2010 showed only joint effusion. (T. 387). An MRI that was performed in May 2010 again showed effusion and chondromalacia patella. [2]

The court finds that the ALJ's finding that the Plaintiff right knee pain was not severe is supported by the record but even if the knee pain was severe the court finds this error to be harmless because the RFC Assessment took the Plaintiff knee pain into consideration.

## B.  Residual Functional Capacity

The Plaintiff contends that the ALJ committed several errors in assessing his residual functional capacity. (RFC).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating

---

[2]Chondromalacia patella:The cartilage under the kneecap is a natural shock absorber. Overuse, injury or other factors may lead to a condition known as chondromalacia patella (kon-droh-muh-LAY-shuh puh-TEL-uh) — a general term indicating damage to the cartilage under the kneecap. A more accurate term for chondromalacia patella is patellofemoral (puh-tel-o-FEM-uh-rul) pain syndrome.  Www.mayo.clinic.org

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ determined the Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is able to only occasionally balance and stoop and can never climb, kneel, crouch or crawl. He cannot perform work overhead and must avoid concentrated exposure to hazards including unprotected heights and dangerous moving machinery. Non-exertionally, the claimant is able to perform work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct and

-6-

concrete." (T. 14).

### 1. Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence."  *Perks v. Astrue*  687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

This court concludes that, because the ALJ gave several valid reasons for the ALJ's determination that Plaintiff was not entirely credible, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012)

### 2. Obesity

The Plaintiff contends that the ALJ did not properly consider his obesity.  (ECF No. 11, p. 16-17).

Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically determinable impairment" that can constitute a severe impairment under Listing 12.05C, and reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR

00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000). The ALJ found that Plaintiff's obesity was a medically determinable severe impairment (Tr. 12).

The Plaintiff did not list obesity as a condition that limited his work. (T. 168). The fact that the plaintiff did not allege the impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of the impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). No doctor placed any limits on the Plaintiff as a result of his weight. *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004).

It is clear that the ALJ considered the Plaintiff's obesity in fashioning the Plaintiff RFC and the Plaintiff's claim that the ALJ failed to consider the Plaintiff's obese condition is without merit.

### 3. RFC Determination

Prior to filing for disability in November 2009 the Plaintiff had almost no medical history. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

The ALJ sent the Plaintiff for a consultive physical examination which was performed by Dr. Brownfield on February 23, 2010. Dr. Brownfield reported that x-rays showed moderate degenerative disc disease and osteoarthritis in the lumbar spine and mild osteosrthritic changes in the right hip, however, Plaintiff's right knee was normal (Tr. 311). Dr. Brownfield diagnosed Plaintiff with low back pain secondary to degenerative disc disease and osteoarthritis with

radiculopathy and a suspected disc herniation, bilateral knee pain, and right hip pain secondary to mild osteoarthritis (Tr. 311). Dr. Brownfield assigned Plaintiff moderate limitations with prolonged position and moderate to severe limitations in lifting, stooping, kneeling, and standing as well as moderate limitations globally, secondary to depression (Tr. 311).

Dr. Bill Payne, a non-examining consultive physician, considering Dr. Brownfield's report, and the Plaintiff's existing medical records found the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could stand and/or walk and sit for 6 hours in an 8-hour workday. (T. 317). Dr. Payne found on Postural Limitations (T. 318), Manipulative Limitations (T. 319) or Environmental Limitations. Dr. Payne felt the Plaintiff could perform Light Work. (T. 323). Dr. Payne's findings were reviewed and affirmed by Dr. Ronald Crow on April 14, 2010. (T. 327).

The Plaintiff countered Dr. Payne's assessment with a Residual Functional Capacity Questionnaire completed by Dr. M.B. Moore on May 24, 2010. Dr. Moore's assessment was that the Plaintiff could only sit for 15 minutes (T. 361) and could only stand for 45 minutes. (T. 362). He felt that he could never lift any weight even an item less than 10 pounds, and that he could never twist, stoop, crouch, climb ladders or stairs. (T. 363).

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical

assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted)., nor did he perform any objective test. In reviewing Dr. Moore's RFC assessment the court notes that the first line required him to disclose the "Nature, frequency and length of contact" but Dr. Moore left that line blank. (T. 360). It is impossible to tell if Dr. Moore was actually a treating physician or if he was just seeing Dr. Moore for the purpose of obtaining benefits. Regardless the ALJ was correct to discount Dr. Moore's opinion.

Dr. Moore does not perform any objective medical test nor does it appear that he reviewed any of the Plaintiff's medical records or reports from other physicians. It was proper for the ALJ to decline to give weight to the vague, conclusory, and unsupported opinions of treating physician on Plaintiff's residual functional capacity, *see Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010). *See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration)

It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.' " *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir.1995). The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. *Id*. *Johnson v. Apfel* 240 F.3d 1145, 1148 (C.A.8 (Neb.),2001)

The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

The Plaintiff also asserted in November 2009 that he was disabled because of depression and anxiety (T. 167).  The Plaintiff had no treatment for mental health issues in his past and when he was screened at the Department of Corrections in Florida in 2007 his psychiatric evaluation was normal. (T. 281).   *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

On February 3, 2010, Nancy A. Bunting PH.D., performed a mental status and evaluation of adaptive functioning on Plaintiff (Tr. 300-04). Dr. Bunting noted that Plaintiff denied any psychiatric hospitalization and reported his only counseling was court-ordered due to his conviction as a sex offender (Tr. 300). Dr. Bunting also noted Plaintiff reported his last job of installing phones lasted six months  and he left the job in April 2006 because he was jailed (Tr. 301). Dr. Bunting reported that although Plaintiff alleged severe pain in his knee and back,

-11-

Plaintiff had no obvious indications of pain in the interview (Tr. 301). Dr. Bunting reported that Plaintiff takes care of all his personal care needs, washes dishes, does laundry, sweeps, cooks occasionally, watches television, mows the yard, reads do-it-yourself magazines, and participates in bladesmithing6 for a hobby (Tr. 303-04). Dr. Bunting noted that Plaintiff had no complaints about his memory and reported no history of concussions, comas, seizures, or being knocked out (Tr. 303). Dr. Bunting found that Plaintiff had the ability to cope with the typical mental/ cognitive demands of basic work-like tasks, complete work-like tasks within an acceptable manner, and the ability to attend and sustain his concentration on basic tasks (Tr. 304). Dr. Bunting also found that Plaintiff appeared to be guarded and evasive and his level of effort and cooperation were superficial and variable (Tr. 304). Based on these findings, Dr. Bunting did not diagnose Plaintiff with a mental impairment other than a rule-out diagnosis of a personality disorder (Tr. 303).  A Mental RFC Assessment performed by Abesie Kelly, Ph.D. on February 26, 2010 found that the Plaintiff had "no identifiable MDI." (T. 324).

Dr. Van Smith, at the request of the Plaintiff's attorney, examined the Plaintiff in April 2010 and offered the opinion that the Plaintiff had "cognitive disorder, non-psychotic, secondary to General Medical Conditions." (T. 332).  Dr. Smith then provided a Mental RFC assessment that basically found the Plaintiff to be severely impaired. (T. 334-336). The Eight Circuit has repeatedly held that visiting doctors in order to receive benefits does not support a finding of disability. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (holding that the plaintiff's encounters with doctors appeared to be linked primarily to quest to obtain benefits, rather than to obtain medical treatment).  The court also notes that when the Plaintiff was seen by Dr. Moore in May 2010 there was no indication of depression or anxiety. (T. 361).

-12-

The court believes that the ALJ properly discounted the opinion of Dr. Smith and properly weighed the opinions of Dr. Smith, Dr. Kelly, and Dr. Bunting and correctly arrived at a mental component in addressing the Plaintiff's RFC.

The court finds that the ALJ properly discounted the opinions of a consulting physician and several treating physicians as to Plaintiff's residual functional capacity (RFC), *see Renstrom v. Astrue*, 680 F.3d 1057 at 1064 (treating physician's opinion does not automatically control); *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) (generally when consulting physician examines claimant only once, his opinion is not considered substantial evidence); that Plaintiff failed to meet his burden of demonstrating his RFC, *see Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.2012); and that the ALJ's first hypothetical to the vocational expert (VE) accounted for all of Plaintiff's proven impairments, *see Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir.2011) (VE's testimony constitutes substantial evidence when it is based on hypothetical that accounts for all of claimant's proven impairments; hypothetical must include impairments that ALJ finds substantially supported by record as a whole).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this February 18, 2014.

*/s/ J. Marschewski*

Honorable James R. Marschewski
Chief U.S. Magistrate Judge

-13-